**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TINA HORN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-405 |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | Judge Cathy Bissoon |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Plaintiff's Motion for Summary Judgment (Doc. 11) will be

denied, and Defendant's Motion for Summary Judgment (Doc. 15) will be granted.

Plaintiff Tina Horn ("Horn") protectively applied for disability insurance benefits

("DIB") and supplemental security income ("SSI") benefits on December 4, 2008, alleging that

she had become "disabled" on June 15, 2007.  (R. at 33, 139, 142).  Pennsylvania's Bureau of

Disability determination denied the applications on March 16, 2009.  (R. at 72, 77).  Horn

responded on March 20, 2009, by filing a timely request for an administrative hearing.  (R. at 92-

93).  On June 15, 2010, a hearing was held in Pittsburgh, Pennsylvania, before Administrative

Law Judge ("ALJ") Guy Koster.  (R. at 31).  Horn, who was represented by counsel, appeared

and testified at the hearing.  (R. at 35-62).  At the request of her counsel, Horn amended her

alleged onset date to October 30, 2008.  (R. at 61-62).  David A. Zak ("Zak"), an impartial

vocational expert, also testified at the hearing.  (R. at 62-67).  In a decision dated August 25,

2010, the ALJ determined that Horn was not "disabled" within the meaning of the Social Security Act. (R. at 9-25).

On September 22, 2010, Horn sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 5, 7). The Appeals Council denied the request for review on January 27, 2012, thereby making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner") in this case. (R. at 1). Horn commenced this action on March 29, 2012, seeking judicial review of the Commissioner's decision. (Docs. 1 & 3). Horn and the Commissioner filed motions for summary judgment on September 4, 2012, and November 9, 2012, respectively. (Docs. 11 & 15). The parties' cross-motions for summary judgment are now ripe for disposition.

Horn was born on March 2, 1960. (R. at 35). At the age of fourteen, she started to work as a hat checker and cashier at a restaurant. (R. at 38). Horn graduated from high school in 1978. (R. at 38, 161). At some point after her graduation, she became the restaurant's manager and bookkeeper. (R. at 38). During the course of her tenure in that position, Horn apparently engaged in conduct constituting theft by deception under Pennsylvania law. (R. at 37). She was terminated in late 2001, after acknowledging her illegal conduct. (R. at 38-39, 157).

Between March 2002 and April 2006, Horn worked as a waitress and bartender for a different establishment. (R. at 157). Criminal charges based on her earlier misconduct were ultimately initiated. Horn stopped working on April 5, 2006, in order to begin a prison sentence. (R. at 156). She was paroled on October 30, 2008. (R. at 37). At the hearing, Horn amended her alleged onset date to coincide with the date of her release. (R. at 61-62).

Horn was found to be suffering from degenerative disc disease of the lumbar spine, status post laminectomy/decompression, osteoarthritis of the right knee, benign hypertension, major

depressive disorder, panic disorder without agoraphobia, post traumatic stress disorder, and

cocaine dependence and alcohol abuse (in remission).  (R. at 14).  In accordance with 20 C.F.R.

20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Horn's residual functional capacity as

follows:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform light work except she can perform no
> more than occasional bending, stooping, kneeling, crouching, and crawling;
> allowing her to have an alternate sit-stand option; and avoiding exposure to
> extremes in temperatures.  In addition, due to problem[s] with concentration and
> memory, she is limited to performing jobs involving simple, routine, repetitive
> tasks requiring little independent judgment at a non-production rate pace with
> little or no changes in the work setting and only occasional contact with the
> general public, co-workers, and supervisors.

(R. at 16).  In light of this assessment, the ALJ concluded that Horn could work as an office

helper, a rental car deliverer, or a storage rental clerk.  (R. at 24).  Zak's testimony established

that these jobs existed in the national economy.  (R. at 64-65).

At the hearing, Horn testified that she had not received adequate treatment for her back

impairments during the course of her incarceration.  (R. at 40).  Shortly after her release from

prison, Horn sought treatment from Dr. Megan Helen Cortazzo, who worked as a pain

management specialist for the University of Pittsburgh Medical Center's Department of Physical

Medicine and Rehabilitation.  (R. at 501-503).  On July 28, 2009, Dr. Cortazzo opined that Horn

could not sit or stand for more than ten minutes at a time, and that she needed an accommodation

permitting her to change positions at will.[1]  (R. at 505-506).

---

[1] Dr. Cortazzo's opinion contradicted an assessment submitted by Jennifer Wawrin ("Wawrin"),
a non-examining medical consultant.  Wawrin reported that Horn was physically capable of
performing a range of "light" work involving only occasional postural maneuvers.  (R. at 299-
305).

A magnetic resonance imaging ("MRI") scan of Horn's back revealed the existence of degenerative disc disease, anteriolisthesis, disc herniations and stenosis.  (R. at 635).  Dr. Adam Kanter recommended that Horn undergo surgery to alleviate her pain.  (R. at 635).  The recommended surgery was performed by Dr. Kanter on September 15, 2009.  (R. at 550-563, 580-582).  One month later, Horn reported that the pre-operative pain in her lower back and right leg had been resolved.  (R. at 632).  As of December 17, 2009, she was "walking straighter and stronger than ever and ha[d] completely stopped all pain medications."  (R. at 630).  Horn later completed a formal physical therapy program.  (R. at 629).

During the course of her administrative hearing, Horn needed to stand periodically in order to alleviate the discomfort in her back.  (R. at 45, 47).  She testified that, on a typical day, she could stand still for only ten minutes at a time.  (R. at 48).  Horn further explained that she could usually sit for anywhere from five to twenty minutes at a time, depending on the weather.  (R. at 48).  The ALJ partially credited this portion of Horn's testimony by affording her "an alternate sit-stand option" and ruling out jobs involving "exposure to extremes in temperatures."  (R. at 16).  These limitations were conveyed to Zak at the hearing.  (R. at 64).  In response to a hypothetical question describing an individual with the functional limitations contained within the ALJ's residual functional capacity assessment, Zak testified that the described individual could work as an office helper, a rental car deliverer, or a storage rental clerk.  (R. at 64-65).  The ALJ later relied on Zak's testimony as a basis for denying Horn's applications for benefits.  (R. at 24-25).

In support of her motion for summary judgment, Horn argues that the ALJ erred in failing to inquire as to whether Zak's testimony was consistent with the job descriptions contained in the Dictionary of Occupational Titles ("DOT").  (Doc. 12 at 5-13).  Attached as exhibits to Horn's

motion are the DOT's job descriptions for the positions identified by Zak in response to the ALJ's hypothetical question. (Doc. 12-1). Horn points out that those job descriptions do not reference the sit/stand option described by the ALJ. (Doc. 12 at 8-9). She maintains that this "conflict" between Zak's testimony and the information contained in the DOT necessitates a remand for further consideration of her claims. (*Id.* at 13).

Social Security Ruling 00-4p requires an administrative law judge to ask a testifying vocational expert whether his or her testimony is consistent with the DOT, and to elicit a "reasonable explanation" for any conflict between the two sources of information. *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002). When this step is omitted, a remand for further proceedings is not invariably required. *Jones v. Barnhart*, 364 F.3d 501, 506, n. 6 (3d Cir. 2004). The United States Court of Appeals for the Third Circuit has explained that inconsistencies between a vocational expert's testimony and the job descriptions found in the DOT "need not be fatal if substantial evidence exists in other portions of the record that can form an appropriate basis to support the result" reached by the Commissioner. *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005).

Under the present circumstances, a remand for further proceedings is not required. After listening to Horn's testimony, Zak was asked to provide the ALJ with "the occupational titles, skill levels and exertional levels" of Horn's prior jobs "as defined by the information contained in the Dictionary of Occupational Titles." (R. at 63). In response to the ALJ's instruction, Zak provided the relevant information about Horn's past relevant work. (R. at 63). The ALJ proceeded to ask a hypothetical question describing an individual with the abilities and limitations included within his subsequent assessment of Horn's residual functional capacity. (R. at 63-64). Zak testified that an individual with those limitations could not perform the work-

related duties previously performed by Horn.  (R. at 64).  When asked whether such an

individual could perform the duties of other jobs existing in the national economy, Zak identified

the office helper, rental car deliverer and storage rental clerk positions later relied upon by the

ALJ.  (R. at 24, 64-65).  Zak stated that while the DOT classified the rental car deliverer position

as a "semi-skilled" job, his experience had led him to categorize it as an "unskilled" job.  (R. at

64).  In a follow-up question, the ALJ asked whether jobs existed in the national economy for an

individual with the same limitations who could perform only "sedentary" work.  (R. at 65).  Zak

responded by testifying that such an individual could work as a telephone survey worker,

telephone solicitor or ticket checker.  (R. at 65-66).  He explained that the telephone survey

worker position, as described in his testimony, was a "sedentary" position even though it was

classified as a "light" position by the DOT.  (R. at 65).  Zak also pointed out that, based on his

experience, the telephone solicitor position was an "unskilled" job even though the DOT

categorized it as a "semi-skilled" job.  (R. at 65-66).  A careful reading of the colloquy at the

hearing reveals that Zak described the conflicts between his testimony and the DOT without

being asked, making it unnecessary for the ALJ to make the inquiry prescribed by Social

Security Ruling 00-4p.  The context of Zak's testimony suggests that he was relying on his own

"experience" in order to identify jobs consistent with Horn's residual functional capacity.  (R. at

64-66).

Admittedly, Zak neglected to mention that the DOT's job descriptions did not include the

sit/stand option contained in the ALJ's hypothetical question.  (R. at 64-65).  That omission,

however, does not justify a remand for further proceedings.  As the United States District Court

for the District of Delaware recognized in *Conn v. Astrue*, 852 F.Supp.2d 517, 528 (D. Del.

2012), "the DOT simply does not address sit/stand options."  In this vein, the testimony given by

Zak and the job descriptions found in the DOT were "not in conflict."  *Id.*  Furthermore, the record contains no indication that Zak hesitated in testifying that an individual with Horn's functional limitations could work as an office helper, a rental car deliverer, or a storage rental clerk.  *Boone v. Barnhart*, 353 F.3d 203, 205-209 (3d Cir. 2003) (remanding a case in which the Commissioner had wrongfully based a denial of benefits on ambivalent testimony given by a vocational expert).  Since the ALJ's hypothetical question adequately conveyed the sit/stand option to Zak, Zak's testimony constituted substantial evidence that an individual in need of that accommodation could perform the duties of those jobs.  (R. at 64); *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).

On March 2, 2009, Dr. Linda S. Rockey performed a consultative psychological evaluation of Horn in connection with her applications for DIB and SSI benefits.  (R. at 311-320).  After completing the evaluation, Dr. Rockey reported that Horn was "moderately" limited in her ability to interact appropriately with members of the general public.  (R. at 319).  Dr. Kerry Brace, a non-examining psychological consultant, opined on March 3, 2009, that Horn was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment."  (R. at 323).  In the "summary conclusions" section of her consultative report, Dr. Brace indicated that Horn was "markedly" limited in her ability to interact appropriately with members of the general public.  (R. at 322).  In the portion of her report explaining her "summary conclusions" in narrative form, Dr. Brace stated that Horn was "able to maintain socially appropriate behavior."  (R. at 323).  The ALJ restricted Horn to jobs involving only "occasional contact with the general public."  (R. at 16).

When conflicting medical opinions appear in the record, an administrative law judge is ordinarily "free to choose the medical opinion of one doctor over that of another."  *Diaz v.*

*Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009).  In that situation, however, the administrative law judge must explain his or her reasons for crediting one opinion and rejecting the other.  *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003).  Horn argues that the ALJ failed to explain his reasons for "ignoring" Dr. Brace's finding of a "marked" limitation in the area of dealing with the public.  (Doc. 12 at 13-16).

The ALJ specifically observed in his decision that Dr. Rockey had found only "slight to moderate limitations in all areas of [Horn's] mental function except for understanding and remembering detailed instructions and carrying out detailed instructions."  (R. at 21).  He further remarked that Dr. Brace had found Horn's mental impairments to be "severe but not disabling."  (R. at 22).  The ALJ's determination that Horn could tolerate occasional contact with members of the general public is not necessarily inconsistent with Dr. Brace's opinion.  A finding of a "marked" limitation in a given area does not mean that a claimant is absolutely precluded from functioning in that area.  *Hansford v. Astrue*, 805 F.Supp.2d 140, 146, n. 5 (W.D. Pa. 2011); *Quinones v. Astrue*, 672 F.Supp.2d 612, 621 (D. Del. 2009).

The record simply does not support Horn's tacit assertion that she is unable to tolerate occasional interaction with members of the general public.  At the hearing, Horn described instances in which she had shopped in public with her mother.  (R. at 51, 57).  She attributed her unwillingness to be around large groups of people to shame that she felt about her criminal past.  (R. at 52, 56).  Horn explained that she was "alright" going to a grocery store filled with a "medium" amount of people, and that she would become "claustrophobic" only when surrounded by "too many people."  (R. at 51).  The ALJ relied on Horn's testimony, in addition to Dr. Rockey's opinion, in determining that Horn could handle occasional public interaction.  (R. at 21-23).  Since Dr. Brace declared that Horn was "able to maintain socially appropriate

8

behavior," her opinion was not directly in conflict with the relevant portion of the ALJ's residual functional capacity assessment.  (R. at 323).  To the extent that such a conflict existed, the ALJ's discussion of the documentary and testimonial evidence was sufficient to implicitly reject anything in Dr. Brace's consultative report suggesting that Horn was precluded from dealing with members of the general public.  *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 205 (3d Cir. 2008).  The Commissioner's decision denying Horn's applications for DIB and SSI benefits is supported by substantial evidence and will be affirmed.

## II.  ORDER

Plaintiff's Motion for Summary Judgment (**Doc. 11**) is **DENIED**, Defendant's Motion for Summary Judgment (**Doc. 15**) is **GRANTED**, and the decision of the Commissioner of Social Security is **AFFIRMED**.

IT IS SO ORDERED.


April 4, 2013                                         s\Cathy Bissoon_____
                                                     Cathy Bissoon
                                                     United States District Judge

cc (via ECF email notification):

All Counsel of Record